**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CRIM NO. 19-CR-211 (JDB)** |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **THOMAS MOIR** | ) | **SENTENCING:  October 16, 2019** |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District

of Columbia, hereby submits the following memorandum to assist the Court in issuing an

appropriate sentence in this case.  For the reasons set forth herein, the government recommends

that the Court sentence the defendant to a term of incarceration of 70 months, to be followed by a

period of ten years supervised release, with the conditions recommended by United States Office

of Probation, including that the defendant undergo intensive sex offender and drug treatment, the

defendant's computer and internet usage be monitored, and the defendant's direct contact with

minors be limited and supervised as determined appropriate by the Probation Office.  The

defendant is required by statute to register as a sex offender for a minimum period of 25 years.

I.      **BACKGROUND**

A.      **Factual Summary**

On or about October 10, 2018, the defendant used the website "Rabbit"[1] to distribute

child pornography using the Rabbit screen name "BREAKINSMIRK."  The defendant did so

---

1 Rabbit, Inc. ("Rabbit") owns and operates a free-access social-networking website of the same
name that can be accessed at http://www.rabb.it ("Rabbit").  Rabbit defines itself as an online
space that users can share and stream videos or photographs with other users.  Rabbit is capable
of being used on an Android, Apple, or web-based operating system.

from the IP address 108.48.193.189, which was registered to his home address in the District of Columbia. The defendant uploaded approximately twelve images depicting child pornography to Rabbit, which Rabbit identified as known child pornography by using the Microsoft Photo DNA application ("Photo DNA").[2] Rabbit notified the National Center for Missing and Exploited Children ("NCMEC") via CyberTips #41484300, #41529487, #41483646, #41539030, #41537432, #41529709, #41529534, #41484659, #41538814, #41537095, #41529615, and #41484513 (Collectively "the CyberTips"). On or about November 2, 2018, NCMEC in turn alerted the Metropolitan Police Department ("MPD")/Federal Bureau of Investigation ("FBI") Child Exploitation Human Trafficking Task Force ("CEHTTF") to the activity on the defendant's account.

Members of the CEHTTF reviewed the images posted by the defendant. Ten of the images depicted the genital and anal areas of pre-pubescent female minors. The majority of the minor females depicted are Caucasian, have light blonde hair, and one of the minor females can be seen holding a large sex toy while her genitals and anus are the focus of the image. Of the two remaining images, one displays a minor female sleeping with her nipples exposed, and the second displays two minor females apparently penetrating one another's vaginas with their fingers.

The CEHTTF then identified additional Rabbit accounts used by the defendant, to include those with user names "MMONTANA," "BUNNY35950," "BREAKINSMIRK," and "FAPPY_STROKEZ," all of which the defendant had accessed from his same home IP address.

---

2 Photo DNA works by processing the content of image and video files through an algorithm to create a unique numerical "hash" value—akin to a digital fingerprint—for each file's content. It then compares these numerical hash values to the numerical hash values of known child pornography files, and identifies when an image or video file on the service running Photo DNA matches a known child pornography image or video.

Rabbit had banned the defendant's accounts of "BREAKINSMIRK," "MMONTANA" and "FAPPY_STROKEZ" due to matches identified by the PhotoDNA application identifying images of child pornography on the accounts.

In total, CEHTTF received CyberTips from NCMEC regarding Rabbit reporting child pornography having been distributed using their servers from three of the accounts listed above. The first was the group of CyberTips described above from October 10, 2018 regarding the user account "BREAKINSMIRK". Rabbit also provided a CyberTip regarding the user account "MMONTANA" on November 26, 2018, and another CyberTip regarding the user account "BREAKINSMIRK" on December 7, 2018. All of the CyberTips reported contained numerous images of child pornography and child erotica associated with those accounts. The images are almost all exclusively of Caucasian female minors appearing to range in age from pre-pubescent to teenaged, with light colored hair.

On December 14, 2018, the CEHTTF obtained a search warrant from the United States District Court for the District of Columbia for the content of the Rabbit user accounts "MMONTANA," "BREAKINSMIRK," "FAPPY_STROKEZ," and "BUNNY35950."[3] In response to the warrant, Rabbit provided the contents of those accounts, to include images contained within the accounts and communications with other individuals on Rabbit using those accounts.

The CEHTTF reviewed the images and content of communications for each account provided by Rabbit. In combination, the three accounts contained approximately 230 megabytes of images depicting child pornography, totaling approximately 100 images. These images

---

3 The contents of "BUNNY35950" were not preserved by Rabbit and therefore were not provided.

depicted predominantly Caucasian pre-pubescent females with their genitalia exposed in a sexually explicit manner. For example, among the images included were the following:

1. A pre-pubescent Caucasian female child with blonde hair who is depicted completely nude with the front of her genitals exposed to the camera.  The child has her eyes closed, and appears to have semen running down her face down to her chest and her stomach.

2. A pre-pubescent Caucasian female child wearing no pants or underwear with a dark shirt covering her chest.  The child's exposed vagina and anus are the focus of the camera, and the child is holding a large black sex toy.

3.  A pre-pubescent Caucasian female child who is completely nude, with her anus and vagina exposed to the camera.  The child appears extremely thin and is staring vacantly at the camera.

The content of the communications between the defendant from the accounts "FAPPY_STROKEZ," "BREAKINSMIRK," and "MMONTANA" and other Rabbit users was graphic in nature.  It involved users posting images of child pornography, and then discussing the desired sex acts in which they wished to engage with the children depicted.  The users would type messages, or ask the other to switch to "Mic"[4] so that they could speak to one another, and listen to one another masturbating.  The defendant sent comments in response to images of child pornography that were posted by other users.

Using the "MMONTANA" account, the defendant availed himself of Rabbit's "My Room" feature, which allows the users to create a personal space to host other users for the

---

[4] "Mic" is a term frequently used by computer/gaming console users when they advise other users that they are using their microphone or headphones.

purpose of streaming video, sharing multimedia, and messaging one and another.  From the "MMONTANA" account in such a group room, on or about between November 26 and December 4, 2018, the defendant hosted a group chat that involved conversations and exchange of files among multiple users. This chats within the room included at least three separate conversations with other Rabbit users discussing mutual masturbation while viewing images of teen-aged or younger children.

On January 16, 2019, members of the CEHTTF executed a search warrant issued by the United States District Court for the District of Columbia at the defendant's home in Washington, D.C.  During the course of the search warrant, desktop computer and numerous laptop computers were seized from the basement of the home.  These devices were placed into evidence and provided to a special agent employed by the United States Attorney Office ("USAO") for forensic examination.

At the time of execution of the search warrant, MOIR was located in the home.  MOIR consented to a non-custodial interview outside of the home.  Your affiant and a Special Agent with the FBI conducted the interview.  During the interview, MOIR provided biographical information, and stated that he resides at the home with his wife and toddler son.[5]

A Special Agent trained as a computer forensic analyst conducted a forensic examination of the electronic devices seized from the defendant's home.  These items of evidence included the desktop computer from the basement of the home and a Chromebook.  A search of the desktop computer resulted in the recovery of thumbnail images pulled from websites visited by the user using Internet Explorer, which included two images of child pornography.  The images

---

5 The defendant's son was forensically interviewed at the Safe Shore Children's Advocacy Center and made no disclosure of any sexual or other abuse.

depicted nude pre-pubescent female children with the focus of the camera on their genitalia.

A search of the defendant's Chromebook laptop also revealed approximately two dozen images of child pornography which were saved as thumbnail files by the program "Google Picasa."  These images included pre-pubescent females in various states of undress with their genitalia displayed, or engaging in oral or vaginal sex acts.  The laptop also contained numerous files associated with the accounts the defendant used to access Rabbit and post child pornography.  Additionally the device had been used to download Ares, which is a peer-to-peer file sharing program commonly used by collectors of child pornography to trade images and videos.  A keyword search of "Pedo" had been searched five times on the Ares program.

## II.     SENTENCING CALCULATION

### A.     Statutory Penalties

Distribution of Child Pornography carries a mandatory minimum sentence of five years and maximum sentence of 20 years imprisonment pursuant to 18 U.S.C. § 2252(a)2), a fine of not more than $250,000 pursuant to 18 U.S.C. § 3571(b)(3), an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made, and a period of supervised release – after any period of incarceration – of not less than five years or life pursuant to 18 U.S.C. § 3583(k).  In addition, the Court must assess an amount of $5000 on any non-indigent person convicted under Title 18, United States Code, Chapter 110 pursuant to 18 U.S.C. §3014(a). See PSR ¶¶ 90, 96, 108, 110, 111, and 114.

### B.     Sentencing Guideline Range

The government agrees with the PSR writer regarding the calculation of the defendant's guideline range contained in the PSR.  The government agrees that the base offense level under the United States Sentencing Guidelines ("U.S.S.G.") for Distribution of Child Pornography is 22, pursuant to U.S.S.G. § 2G2.2.  See PSR ¶ 27.  The government agrees with the PSR that the

following Specific Offense Characteristic applies:  the offense involved images depicting prepubescent minors (+2); the offense involved distribution of the images (+2); the offense involved the use of a computer (+2); and the number of images at issue for Sentencing Guidelines calculation purposes was between 10 and 150 images (+2).  See PSR ¶¶ 28 – 31. Accordingly, the defendant's adjusted offense level is 30.  See PSR ¶ 35.

The United States also agrees with the PSR writer that the defendant is entitled to a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and U.S.S.G. § 3E1.1(b), resulting in a total offense level of 27.  See PSR ¶¶ 37-39.

Regarding the defendant's criminal history, the government agrees with the PSR that the defendant has no criminal convictions that count toward his criminal history score, and, therefore, his criminal history score is 0, resulting in a Criminal History Category I.  See PSR See PSR ¶¶ 40-42.  Thus, the applicable Sentencing Guidelines Range is 70-87 months incarceration.  See PSR ¶ 91.

## III.   GOVERNMENT'S RECOMMENDATION

### A.   Application of the Federal Sentencing Guidelines

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1).  Booker, 125 S. Ct. at 756.

In post-Booker cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.")  After giving

both parties an opportunity to argue for an appropriate sentence, the district court should then

consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). Id. These factors include

"the nature and circumstances of the offense and the history and characteristics of the defendant"

(18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the

offense, to provide just punishment for the offense, to afford adequate deterrence to criminal

conduct, to protect the public from further crimes of the defendant, and to provide the defendant

with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18

U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy

statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing

disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the

offense (18 U.S.C. § 3553(a)(7)).

Notably, the United States Sentencing Commission conducted a hearing on the child

pornography sentencing guidelines on February 15, 2012. Department of Justice (DOJ)

employees James Fottrell and Steve DeBrota, and former DOJ employee Francey Hakes

provided the following testimony regarding child pornography offenses:

> In the last ten years, we have seen a sharp increase in the severity and depravity of child pornography offenses, fueled in large part by swiftly advancing technological changes which permit offenders to easily store large numbers of images of child sexual abuse, to create safe havens online where they can communicate and bond with other individuals who encourage and promote the sexual exploitation of children, and to utilize sophisticated methods to evade detection by law enforcement. This increase is reflected in the changes in the content of the images over time, as infants and toddlers are now regularly victimized by child pornography offenders and the victims are forced into more brutal and degrading sexual activity.

See http://www.justice.gov/criminal/ceos/CT/downloads/Testimony-Sentencing-Commission-

Fottrell.pdf.

On February 27, 2013, the Sentencing Commission released a report concerning the

Guidelines for child pornography offenses ("The CP Report").  The CP Report contained

numerous observations that are relevant to a sentencing judge.  The CP Report recognized that

child pornography offenses inherently involve the sexual abuse and exploitation of children, that

child pornography victims are specifically harmed by the distribution of their images over the

Internet, and that many victims suffer lifelong harm at knowing that their images are being used

by offenders for sexual gratification.  The CP Report emphasized the growing problem of online

child pornography communities that facilitate and validate child sexual exploitation.  The CP

Report also identified many problems with the non-production child pornography Guidelines and

included recommendations about how to change the Guidelines to better account for offender

behavior, including through the elimination of some specific offense characteristics and the

revision and addition of other enhancements.

Although the Commission has asked Congress for permission to revise the child

pornography Guidelines, no changes have been made at this time.  The CP Report did not

suggest that courts should ignore the current Guidelines, but instead provided a framework of

factors to consider under the statute.  These factors should be considered in conjunction with–

not instead of – the existing Guidelines.  Unless and until Congress signals its intent to permit

changes to the Guidelines, a sentencing court should determine a defendant's Guidelines range

based on the current Guidelines.  A sentencing court should then consider the CP Report as part

of its analysis of the statutory factors.

**B.      Basis for the Government's Recommendation**

The government submits that a sentence of 70 months incarceration to be followed by a

period of ten years of supervised release, with the specific conditions of supervision

recommended by the United States Office of Probation, is appropriate and warranted in this case

based on the factors in 18 U.S.C. § 3553(a).  The recommended sentence is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

### 1.      Nature and Circumstances of the Offense

The nature and circumstances of the offense charged are egregious because, like in all child pornography-related offenses, they involve the victimization of the most vulnerable victims in society.  The defendant went online and participated in the market in which individuals exchange images of children –in this case even very young children – who are being subjected to sexual abuse that is captured in images and videos and then traded by adults seeking sexual pleasure.  To seek out, distribute and trade such images is not just about the trading of pictures, it is about the exploitation of the children depicted.  Here, the defendant participated in that market, knowingly and willfully making himself one of the people who partook in the exploitation of children for his own sexual gratification.   In addition to the distribution of images depicting the sexual exploitation of children, the defendant also exchanged messages with other individuals regarding a sexual interest in children, and hosted a "My Room" feature on Rabbit to host other users who wanted to post or stream such content.  This conduct merits serious punishment.

To his credit, the defendant himself has come to recognize the harm he caused to the children depicted in the images he collected and traded, as he acknowledges in his written statement to the Probation Office:

> I apologize deeply for ever being a part of the market that is unbelievably harmful to innocent children and their families.  As a parent myself, I know how horrified I would be to learn that my child had been made the subject and victim of child pornography. I wish that I had had that mindset when using my computers, because surely it would have kept me from committing this crime. I truly hope that no more children are exposed and victimized in the way that the subjects of the pictures I transacted in had been. And I offer my sincerest apology.

PSR ¶ 26. The defendant states as well as many of the victims of these offenses – some now grown and many years removed from their abuse – the effects are lasting and extend not just to the children, but their families as well. In mandating a minimum sentence of 60 months incarceration for the instant offense, the legislature recognizes the severity of the harm that the defendant acknowledges.

On the other side of the coin, the defendant's conduct here, though harmful in its effects, is more limited in scope than many offenders charged with the same offense. It appears from the United States' investigation that the conduct described above, in which defendant distributed child pornography using the Rabbit platform, occurred over a limited timeframe of several months at the end of 2018 through the beginning of 2019, when a search warrant was executed at his home by the FBI. The volume of images known to be trafficked by the defendant was also lower than many offenders. It is not uncommon for traffickers and collectors of child pornography in the modern internet age to exchange and collect hundreds and hundreds, if not thousands of such images at a time. Here, the volume of child pornography distributed was lower, as set forth in the statement of offense, and a forensic analysis did not reveal that the defendant had amassed a collection of child pornography on his electronic devices. There is also no indicia or evidence in this case that the defendant engaged in the hands-on sexual abuse of children. The United States sought permission to forensically interview the defendant's child, which he and his wife provided, and the child made no disclosure of sexual abuse.

### 2.      History and Characteristics of the Defendant

It appears from the PSR that the defendant has led a life up until his arrest that has been stable, well supported, and by nearly all measures personally and professionally successful. His parents appear to have raised him in a stable and loving home, and to have provided well. He

has not himself been victimized, and does not appear to have mental health or significant substance abuse issues.  He is well educated, having obtained a law degree from Georgetown University, and has attained career success, working up until his arrest as the Chief of Staff for the Office of Legal Counsel for the D.C. Mayor's Office.  He was, until his arrest, married and raising a child in a home in Northwest, D.C.  Significantly, he enjoys tremendous support from his family, including his parents and his wife, even after his arrest and their learning of the nature of the charges in this case.  He has no criminal history.  These are all advantages that make it very hard to explain how or why the defendant chose the path that lead him to the commission of these offenses.  They are also advantages that make it hard to understand why he would cause so much harm, not only to the victims in this case, but also to those around him, including his wife and his child.  Hopefully, however, they are all also circumstances that will, when he is released from any period of incarceration imposed by this Court, bode well for his ability to rehabilitate himself and to succeed on supervision so that he can ultimately assimilate back into society productively.

To the defendant's substantial credit, he appears to have taken full responsibility for his actions in this case.  He has done so not just in pleading guilty to the charges, but from the outset.  When he was caught by the FBI, which executed a search warrant at his home in January 2019, he obtained counsel and has, from that time – including during the pendency of the investigation before his arrest – indicated a willingness to accept responsibility for his crime.  He self-surrendered on a complaint and agreed to plead guilty to the lead charge against him.  Beyond that, he has before the arrest and after, sought therapy to begin the (undoubtedly lengthy) process of addressing the issues that caused him to engage in this behavior.  His statements to the PSR writer also express an abject acceptance of responsibility for his conduct.  This acceptance

and early efforts to seek assistance therapy are to his credit and, hopefully, will also bode well for his potential to succeed post release from any period of incarceration imposed.  Defendant's early and complete acceptance of responsibility support the government's recommendation at the bottom of the sentencing guidelines range.

### 3.       Punishment, Deterrence, Protection, and Correction

A sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2).

The government's recommended sentence is sufficient, but not greater than necessary, to provide just punishment for the defendant's offenses.

### 4.       Available Sentences

The defendant should be sentenced to a term of incarceration.  Probation is expressly precluded by statute.  Further, the defendant is in Zone D of the Guidelines, and thus a probationary sentence would be a departure from the Guidelines.  See PSR ¶ 104-105.  According to the PSR, the defendant does not have the ability to pay a fine in this case.  See PSR ¶ 89.

In addition, the Court should impose a term of supervised release, and the government recommends a term of ten years.  A term of supervised release is critical because it will subject the defendant to ongoing monitoring and sex offender treatment.  The conditions of supervised release should include at least the following conditions, which are conditions imposed in similar cases and conditions that are recommended by the United States Probation Department:

(1) The defendant must register as a sex offender and submit to searches of his person, property, house, residence, vehicle, papers, computers, other electronic communications or data storage devices or media, and effects, at any time, with or without a warrant, by law enforcement or probation officer with reasonable suspicion concerning unlawful conduct or a violation of a condition of supervision.

(2) The defendant must undergo and comply with sex offender evaluation and treatment. This may include the use of polygraph testing as part of the therapeutic process.

(3) The defendant's use of the Internet, computers, and any other Internet-capable devices will be restricted and monitored.

As it relates to the above conditions, first, the defendant will be required by statute to register as a sex offender as a result of his convictions in this case.  Second, the defendant's use of the Internet to commit his crimes justifies monitoring his future use.

### 5.    Restitution

There are no requests for restitution from the victims at the current time.

## IV.    CONCLUSION

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 70 months imprisonment to be followed by a period of ten years of supervised release, with the specific conditions of supervision recommended by the United States, with the recommended conditions of supervision.  The defendant is further required by statute to register as a sex offender for a minimum period of 25 years.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY


___/s/_____
Andrea Hertzfeld
Assistant United States Attorney
D.C. Bar No. 494059
555 Fourth Street, N.W.
Washington, D.C. 20001
(202) 252-7808